UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **TRISHA DONEGAN**, | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | **EP-22-CV-00332-DCG** |
| **THE TORO COMPANY,** | § | |
| **RADIUS HDD DIRECT, LLC, and** | § | |
| **THE CHARLES MACHINE WORKS,** | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Trisha Donegan[1] moves to remand the above-captioned case to state court.

Mot., ECF No. 10.  As discussed below, the Court rejects all but one of Plaintiff's challenges to

this Court's jurisdiction.  The Court will conduct an evidentiary hearing to resolve Plaintiff's

sole remaining challenge.

## I.      BACKGROUND

Plaintiff alleges that her former employers, Defendants Radius HDD Direct, LLC

("Radius"), The Toro Company ("TTC"), and The Charles Machine Works, Inc. ("CMW"),[2]

discriminated and retaliated against her in violation of the Texas Labor Code.  Pet., ECF No. 1-1,

at 6.[3]  Although Plaintiff originally filed this lawsuit in the 327th Judicial District Court of El

---

[1] Plaintiff's current name is Trisha Hanson, but she calls herself Trisha Donegan here because that's the name she used when Defendants employed her.  *See* Donegan Decl., ECF No. 10-1, at 8.  The Court will do the same.

[2] Although Plaintiff alleges that she "served as Controller for [Radius]," she claims that she also "reported to [TTC] and [CMW]."  Pet., ECF No. 1-1, at 5.  Plaintiff therefore describes Radius, TTC, and CMW as her "joint employers."  *Id.*; *see also* Hoversten Decl., ECF No. 11-1, at 2 (explaining that CMW "is a wholly-owned subsidiary of TTC," and that Radius is a subsidiary of CMW).

[3] References to page numbers in this Memorandum Opinion and Order refer to the page numbers assigned by the Court's CM/ECF system, not the cited document's internal pagination.

Paso County, Texas, *see id.* at 4, Defendants removed the case to federal court on diversity jurisdiction grounds, Notice Removal, ECF No. 1.

Plaintiff maintains that the parties are not completely diverse, and that the Court therefore lacks diversity jurisdiction.  Mot. at 1.  Plaintiff accordingly moves to remand the case to state court.  *Id.*

## II.    DISCUSSION

### A.    Applicable Law

Federal courts have limited subject matter jurisdiction.  *E.g.*, *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  A federal court "must presume that a suit lies outside this limited jurisdiction" unless "the party seeking the federal forum" proves that the court may permissibly exercise subject matter jurisdiction over the case.  *Id.*

#### 1.    Removal

Subject to various exceptions and prerequisites,[4]

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant or the defendants[] to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).  In plainer terms, "[a] defendant may"—with exceptions not applicable here—"remove a civil case brought in state court to the federal district court in which the case could have been brought" in the first instance.  *Tex. Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 485 (5th Cir. 2020).  The removing defendant bears the burden to prove that the federal court may exercise subject matter jurisdiction over the removed case.  *E.g.*, *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 239 (5th Cir. 2015).

---

[4] *See, e.g.*, 28 U.S.C. §§ 1441(b)(2), 1445, 1446.

### 2.      Diversity Jurisdiction

One potential basis for exercising subject matter jurisdiction over a removed case—and the only basis available here[5]—is called "diversity jurisdiction."  *See, e.g.*, *Weaver v. Metro. Life Ins. Co.*, 939 F.3d 618, 623 (5th Cir. 2019).  Federal courts may exercise diversity jurisdiction over civil actions between "citizens of different States" so long as "the matter in controversy exceeds the sum or value of $75,000."  28 U.S.C. § 1332(a).  Thus, subject to various exceptions and conditions,[6] a defendant may remove a state court case that satisfies those jurisdictional prerequisites to federal court.  *See, e.g.*, *Weaver*, 939 F.3d at 623.

An action is between "citizens of different States" only if the parties are completely diverse; that is, if "all persons on one side of the controversy" are "citizens of different states than all persons on the other side."  *E.g.*, *Smith v. Toyota Motor Corp.*, 978 F.3d 280, 281 (5th Cir. 2020) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)).  "The party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000."  *Frye v. Anadarko Petrol. Corp.*, 953 F.3d 285, 293 (5th Cir. 2019) (quoting *Garcia v. Koch Oil Co. of Tex.*, 351 F.3d 636, 638 (5th Cir. 2003)).

The applicable test for determining a party's state of citizenship depends on what type of entity that party is.

---

[5] It does not appear that the Court may exercise "federal question jurisdiction" over this case. *Compare* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), *with* Pet. at 6 (asserting causes of action arising exclusively under state law).  Nor does the Court perceive any other potential basis for exercising subject matter jurisdiction here.  *See generally* Pet.

[6] *See supra* note 4.

### a.   Corporations

For instance, with exceptions not relevant here, 28 U.S.C. § 1332(c)(1) provides that a corporation is a citizen of both its state of incorporation and the state in which it maintains its principal place of business.  28 U.S.C. § 1332(c)(1).  A corporation's "principal place of business" is its "nerve center"—that is, "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities."  *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010).  With rare exceptions,[7] a corporation's nerve center is the place it maintains its headquarters.  *Id.* at 93.

### b.   LLCs

By its plain terms, 28 U.S.C. § 1332(c)(1) applies only to corporations.[8]  Congress has not passed a comparable statute specifying how courts should the determine the citizenship of an unincorporated association, such as a limited liability company ("LLC").  *See, e.g.*, *GMAC Com. Fin. LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828–29 (8th Cir. 2004).  The Fifth Circuit has therefore opined that an "LLC should not be treated as a corporation for purposes of diversity jurisdiction."[9]  *Harvey*, 542 F.3d at 1080.

Thus, unlike a corporation, an LLC is *not* a citizen of the State "where it has its principal place of business."  *Contra* 28 U.S.C. § 1332(c)(1).  Instead, "the citizenship of an LLC is determined by the citizenship of all its members."  *MidCap Media Fin., L.L.C. v. Pathway Data,*

---

[7] *See infra* note 18.

[8] *See* 28 U.S.C. § 1332(c)(1) ("[A] *corporation* shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." (emphasis added)); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("The plain language of Section § 1332(c)(1) is simply not applicable to unincorporated associations.").

[9] Thus, to the extent Plaintiff claims that a "limited liability company is a corporation under" 28 U.S.C. § 1332(c)(1), *see* Mot. at 5, she is wrong, *see Harvey*, 542 F.3d at 1080.

*Inc.*, 929 F.3d 310, 314 (5th Cir. 2019) (cleaned up).  Where an LLC maintains its "principal place of business"—*i.e.*, its "nerve center"—is therefore irrelevant for diversity jurisdiction purposes.[10]  *See, e.g.*, *Warren v. Bank of Am., N.A.*, 717 F. App'x 474, 475 n.4 (5th Cir. 2018) ("[T]he citizenship of an LLC is determined by the citizenship of its members, not its principal place of business."); *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 352 (3d Cir. 2013) ("A limited liability company's citizenship is not defined by its principal place of business, and thus the location of its nerve center is not at issue for purposes for establishing diversity jurisdiction.").

### c.    Natural Persons

Nor has Congress statutorily specified how courts should determine a natural person's citizenship for diversity jurisdiction purposes.  *See, e.g.*, *Island Pipeline, LLC v. Sequoyah Ltd.*, No. 3:08-cv-1133, 2009 WL 413584, at *1 (M.D. Fla. Feb. 18, 2009) ("[T]here is no statutory definition of citizenship with regard to natural persons . . . .").  The Fifth Circuit has held, however, that a natural person is (with exceptions not relevant here)[11] a citizen of the state of her domicile—that is, the state where she both resides and intends to make her home.  *E.g.*, *MidCap*, 929 F.3d at 313.

The Fifth Circuit has remarked that "[t]he difference between *citizenship* and *residency* is a frequent source of confusion" when assessing a natural person's citizenship.  *Id.*  Ordinarily, a natural person's place of residence will also be her state of citizenship.  *Id.* ("For individuals, 'citizenship has the same meaning as domicile,' and 'the place of residence is prima facie the

---

[10] The Court therefore rejects Plaintiff's contrary argument that the fact "that citizenship of an LLC depends on the citizenship of all its members . . . does not mean that the 'nerve center' test does not also apply to LLCs."  *Contra* Mot. at 8.

[11] *See* 28 U.S.C. § 1332(c)(2).

domicile.'" (quoting *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954))). Still, "citizenship and residence . . . are not synonymous terms." *Id.* (cleaned up) (quoting *Robertson v. Cease*, 97 U.S. 646, 648 (1878)). Because "citizenship requires not only 'residence in fact' but also 'the purpose to make the place of residence one's home,'" an "allegation of residency alone 'does not satisfy the requirement of an allegation of citizenship.'" *Id.* (cleaned up) (first quoting *Texas v. Florida*, 306 U.S. 398, 424 (1939); then quoting *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984)).

**B.        The Parties' Positions**

        The parties disagree about their respective states of citizenship—and, thus, whether the parties are completely diverse.[12]   Defendants say the parties are completely diverse because Plaintiff is a citizen of Texas, CMW and Radius are citizens of Oklahoma, and TTC is a citizen of Delaware and Minnesota. Notice Removal at 2–3; Resp., ECF No. 11, at 3–9.

**Fig. 1. Defendants' Position Regarding the Parties' Citizenship**

| Plaintiff | Defendants |
|---|---|
| • **Trisha Donegan (TX)** | • **TTC (DE, MN)**<br><br>• **CMW (OK)**<br><br>• **Radius (OK)** |
| **No Defendant is a citizen of the same state as Plaintiff → Complete Diversity** | |

        Plaintiff disagrees. She first maintains that Defendants haven't carried their burden to establish diversity jurisdiction because they've failed to establish her own citizenship. Mot. at 6.

---

[12] Plaintiff does not dispute—and the Court finds—that the amount in controversy exceeds $75,000. *See generally* Mot.; Reply, ECF No. 12; *see also* Pet. at 7 ("Plaintiff seeks monetary relief over $250,000 but not more than $1,000,000 . . . .").

Plaintiff emphasizes that neither her state court Petition nor Defendant's Notice of Removal alleges that she is a *citizen* of Texas; rather, both merely allege that she is a Texas *resident*. *Id.*; *see also* Pet. at 4 ("Plaintiff is an individual *residing* in Hood County, Texas." (emphasis added)); Notice Removal at 2 (same). Because, as discussed above, a natural person's residence in a particular state doesn't necessarily entail that she is a citizen of that state, *see supra* Section II.A.2.c, Plaintiff claims that Defendants haven't established that she and Defendants are citizens of different states, Mot. at 6.

Plaintiff also argues that Defendants have failed to introduce competent evidence regarding CMW's state of citizenship, and have thereby failed to prove that CMW is a citizen of a different state than her. Mot. at 6–7; Reply at 1–4.

Plaintiff argues in the alternative that even if the Court ultimately finds that she is a Texas citizen, the parties still are not completely diverse because Radius is also a Texas citizen, not an Oklahoma citizen as Defendants maintain. Mot. at 8–10.

**Fig. 2. Plaintiff's Position Regarding the Parties' Citizenship**

| Plaintiff | Defendants |
|---|---|
| • **Trisha Donegan (??)** | • **TTC (DE, MN)**<br>• **CMW (??)**<br>• **Radius (TX)** |

### 1.     The Court Will Conduct an Evidentiary Hearing to Determine Plaintiff's Citizenship

To reiterate, to be a citizen of a particular state, it is not enough for a natural person to be a resident of that state; she must also possess "the purpose to make th[at] place of residence [her] home." *MidCap*, 929 F.3d at 313 (cleaned up) (quoting *Texas*, 306 U.S. at 424). "Therefore, an

allegation of residency alone 'does not satisfy the requirement of an allegation of citizenship.'"
*Id.* (quoting *Strain*, 742 F.2d at 889).

As noted above, Defendant's Notice of Removal and Plaintiff's Petition allege merely
that Plaintiff is a Texas *resident*, not that she is a Texas *citizen*. *See* Pet. at 4 ("Plaintiff is an
individual *residing* in Hood County, Texas." (emphasis added)); Notice Removal at 2 (same).
That "allegation of residency" does not alone "satisfy the requirement of an allegation of
citizenship." *MidCap*, 929 F.3d at 313 (quoting *Strain*, 742 F.2d at 889).

At least one District Court in this Circuit has remanded a case under nearly identical
circumstances. In *Zielinski v. Allstate Fire & Casualty Insurance Co.*, the defendant "removed
the action to federal court based on diversity of citizenship." No. 3:22-CV-71, 2022 WL
2118981, at *1 (N.D. Tex. June 13, 2022). Like Defendants here, *see* Notice Removal at 2
(citing Pet. at 4), the defendant in *Zielinski* cited the plaintiff's allegation in his state court
petition that he *resided* in Texas as proof that he was a Texas citizen, 2022 WL 2118981, at *4.
Explaining that "mere residence in a state is not sufficient" to establish citizenship, *id.* at *2
(cleaned up) (quoting *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799
(5th Cir. 2007)), the court determined that the plaintiff's allegations about his residency were
"legally insufficient to establish [his] citizenship for diversity purposes," *id.* at *4. The court
therefore concluded that the defendant had "failed to establish . . . complete diversity of
citizenship" and remanded the case to state court.[13]  *Id.* at *5. Although *Zielinski* does not bind

---

[13] The *Zielinski* court also concluded that the defendant had "failed to meet its burden . . . of
establishing that the amount in controversy exceed[ed] $75,000." 2022 WL 2118981, at *4–5. Here, by
contrast, Defendants have satisfied the amount-in-controversy requirement. *See supra* note 12.

this Court,[14] it does suggest that—at least on the current record—Defendants have not met their burden to prove that Plaintiff and Defendants are diverse.

Defendants acknowledge "that residence and [citizenship] are distinct concepts," but nonetheless urge this Court to "accept as true the allegation that Plaintiff is a Texas [citizen] because she d[id] not contest that she is a citizen of Texas in her Motion to Remand."  Resp. at 3. Defendants base that argument on *Myers v. Walmart Inc.*, in which a Magistrate Judge in this Circuit "accept[ed] as true" the defendant's allegation in its notice of removal that the plaintiff was a Louisiana citizen because the plaintiff "state[d] in his petition that he [wa]s a resident of Calcasieu Parish, Louisiana" and "d[id] not contest" the defendant's allegations regarding his citizenship "in his motion to remand."  No. 2:21-CV-02618, 2022 WL 2682109, at *3 (W.D. La. June 10, 2022), *report and recommendation adopted by* 2022 WL 2679603 (W.D. La. July 11, 2022).  Because the defendant was not a Louisiana citizen, the Magistrate Judge concluded that the parties were "citizens of different states," and advised the District Judge to deny the motion to remand.  *Id.*

*Myers* does not bind this Court,[15] and, with great respect for its author, the Court declines to follow its holding here.  For one, the case is distinguishable.  The plaintiff in *Myers* did "not contest [the defendant]'s allegation that the parties [we]re of diverse citizenship;" instead, the court examined the plaintiff's citizenship *sua sponte* to fulfill its "duty to satisfy itself" that the parties were completely diverse.  *Id.*  Here, by contrast, Plaintiff contests both Defendants' allegation that she is a Texas citizen and Defendants' assertion that the parties are completely

---

[14] *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in . . . a different judicial district . . . .") (quoting 18 J. MOORE *ET AL.*, MOORE'S FEDERAL PRACTICE § 134.02[1] [d], p. 134–26 (3d ed. 2011)).

[15] *See supra* note 14.

diverse.  *See generally* Mot.; Reply.  Thus, unlike the plaintiff in *Myers*, Plaintiff did not

completely forgo the opportunity to challenge Defendants' allegations regarding her citizenship.

More fundamentally, Fifth Circuit precedent places "the burden of establishing . . . that

the parties are diverse" on Defendants, *Frye*, 953 F.3d at 293 (quoting *Garcia*, 351 F.3d at 638),

and "any doubts regarding whether removal jurisdiction is proper should be resolved against

federal jurisdiction," *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  The Court

is therefore concerned that accepting Defendants' argument would improperly shift the burden to

Plaintiff to *disprove* that she is a citizen of Texas.

The Court is aware that at least some courts—particularly in the Tenth Circuit—have

adopted such a burden-shifting framework when a removing defendant alleges that the plaintiff

is a resident of a particular state.  For instance, in *Davis & Associates, PC v. Westchester Fire

Insurance Co.*, the court held that "an allegation of residency in a particular state creates a

presumption of continuing residence in that state," which in turn "establishes domicile," which in

turn "establishes citizenship."  No. 10-cv-03126, 2011 WL 4479487, at *3 (D. Colo. Sept. 26,

2011) (citing *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994)).  "This

presumption," in that court's view, "shifts the burden" onto the party opposing removal to

"com[e] forward with contrary evidence" to show that his "citizenship is other than the place of

his residence."  *Id.* (quoting *Kelleam v. Md. Cas. Co. of Balt., Md.*, 112 F.2d 940, 943 (10th Cir.

1940), *rev'd on other grounds*, 312 U.S. 377 (1941)).  Applying that rule, the *Davis & Associates*

court held that the defendants' allegation in their notice of removal that the plaintiff was "a

resident of Colorado" established "a *prima facie* case" that the plaintiff was also "a domiciliary

and citizen of Colorado," and thereby shifted the burden to plaintiff to rebut that presumption.

*Id.* at *3–4.  Because the plaintiff did not "disput[e] that the state in which [he was] alleged to

reside also [wa]s his state domicile or his state of citizenship," the court concluded that the defendant's "allegation of residency [wa]s sufficient to establish [the plaintiff]'s citizenship for the purpose of determining diversity jurisdiction." *Id.*

This Court has not located any Fifth Circuit cases adopting a similar burden-shifting approach. To the contrary, the Fifth Circuit has suggested in a different but related context that a party who bears the burden on a jurisdictional issue cannot "ultimately prevail . . . just because the opposing party offer[s] no rebuttal evidence" regarding a party's citizenship; instead, the court must "consider[] the entire record to determine whether . . . evidence of residency" is "sufficient to establish citizenship." *Preston*, 485 F.3d at 800.

Thus, rather than remand the case outright like the court did in *Zielinski*, and rather than hold that Defendants' allegations regarding Plaintiff's state of residence are alone sufficient to prove Plaintiff's state of citizenship like the courts apparently did in *Myers* and *Davis & Associates*, the Court will conduct an evidentiary hearing to decide for itself whether Plaintiff is a Texas citizen. *See, e.g.*, *Dubier v. Triangle Capital Props., LLC*, No. 1:21-CV-415, 2022 WL 2654226, at *3 (E.D. Tex. July 7, 2022) (explaining that, to decide whether parties are diverse, a court may "conduct an evidentiary hearing and 'may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction'" (quoting *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 n.1 (5th Cir. 2018))).

"In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties." *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996). "The court has wide . . . discretion to determine what evidence to use in making its determination of jurisdiction." *Id.* This Court will therefore take live testimony

and evidence to determine whether, besides *residing* in Texas, Plaintiff also intends to *remain* in Texas. *See, e.g.*, *Preston*, 485 F.3d at 798 (holding that citizenship "requires residence in the state and an intent to remain in the state").[16] The evidentiary hearing will focus exclusively on Plaintiff's state of citizenship; the Court will not accept evidence or argument relating to any other matter.

### 2. CMW is a Citizen of Oklahoma (and Only Oklahoma)

Plaintiff's remaining challenges to this Court's jurisdiction are meritless. She first argues that Defendants cannot prove that she and Defendants are diverse because they did not produce competent evidence regarding CMW's citizenship. Mot. at 6–7; Reply at 1–4.

The Court disagrees. Defendants attached to their response to Plaintiff's Motion a declaration from Kelly Hoversten, TTC's Director and Corporate Counsel.[17] *See* Hoversten Decl., ECF No. 11-1; *see also, e.g.*, *Molina v. Wal-Mart Stores Tex., L.P.*, 535 F. Supp. 2d 805, 807 (W.D. Tex. 2008) ("A court may consider information contained in an affidavit filed subsequent to the notice of removal to determine whether there is an adequate basis for

---

[16] *See also, e.g.*, *Coury*, 85 F.3d at 251 ("In determining a litigant's domicile, the court must address a variety of factors. No single factor is dispositive. The court should look to all evidence shedding light on the litigant's intention to establish domicile. The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family.").

[17] Defendants originally supported their Notice of Removal with a declaration from TTC's Vice President, General Counsel, and Corporate Secretary, Amy E. Dahl. Dahl Decl., ECF No. 1-1. Ms. Dahl averred in her declaration that "CMW is a corporation that is organized under the laws of the state of Oklahoma and maintains its principal office in Perry, Oklahoma." *Id.*

Plaintiff insists that Ms. Dahl's declaration is "inadmissible" because it "does not indicate it [wa]s made on personal knowledge." Mot. at 7. Plaintiff further asserts that Ms. Dahl's statements in her declaration are too "conclusory . . . to establish the citizenship of" CMW. *Id.* at 6–7.

Because the Court concludes below that Hoversten's declaration is alone sufficient to establish that CMW is an Oklahoma citizen, the Court will disregard Ms. Dahl's declaration without deciding whether Plaintiff's challenges have merit.

removal."). Hoversten's declaration contains averments made on "personal knowledge" and "[u]nder penalty of perjury" that, taken together, establish that CMW is a citizen of Oklahoma—and only Oklahoma. *See* Hoversten Decl. at 2–3.

Hoversten first avers that "CMW is a corporation that is organized under the laws of Oklahoma." *Id.* A corporation is a citizen of its state of incorporation, *see* 28 U.S.C. § 1332(c)(1), so CMW is at minimum a citizen of Oklahoma.

Hoversten's declaration establishes that CMW's principal place of business is Oklahoma as well. Hoversten declares under penalty of perjury that CMW's headquarters is in Oklahoma. Hoversten Decl. at 2–3. As noted, a corporation's nerve center is presumptively the place it maintains its headquarters. *Hertz*, 559 U.S. at 93. Although there are rare circumstances in which a corporation's headquarters will not be its nerve center,[18] the record contains no indication that those circumstances are present here. Hoversten avers that "CMW's officers control and direct CMW's corporate activities from its headquarters located in Perry, Oklahoma. The primary decision-makers for all of CMW's business activities are located in Perry, Oklahoma at CMW's headquarters. CMW's Texas activities are governed by personnel located in CMW's Perry, Oklahoma corporate headquarters." *Id.* The Court credits Hoversten's declaration and finds that Oklahoma is CMW's principal place of business. Thus, CMW is a citizen of Oklahoma (and Oklahoma alone).

Plaintiff nonetheless insists that the Court cannot consider Hoversten's declaration when determining CMW's citizenship. She first argues that Hoversten's declaration "fails to establish how he, as corporate counsel for [TTC] in Minnesota, has personal knowledge of [CMW's]

---

[18] *See Hertz*, 559 U.S. at 97 ("[I]f the record reveals attempts at manipulation—for example, that the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the courts should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation.").

operations of corporate activities in Oklahoma or Texas, and therefore is inadmissible." Reply at 3. According to Plaintiff, "Hoversten offers no observations or experiences or even connection with [CMW] and, thus, fails to establish the basis for any personal knowledge." *Id.*

The Court disagrees. CMW "is a wholly-owned subsidiary of TTC," and the Court finds it both plausible and likely that TTC's Director and Corporate Counsel personally knows where TTC's subsidiary's officers "control and direct" that subsidiary's corporate activities and where that subsidiary's "primary decision-makers" are located. *See* Hoversten Decl. at 2; *cf. Booker v. JBT Aerotech*, No. H-10-3512, 2010 WL 11578740, at *2 (S.D. Tex. Dec. 16, 2010) (crediting defendant's Deputy General Counsel's sworn declaration made "on personal knowledge" regarding the defendant's organizational structure and its relationship with two of its business units). The Court therefore credits Hoversten's averment that he has personal knowledge of the facts in his declaration, and admits his declaration as competent evidence.

Plaintiff also asserts that "Mr. Hoversten's declaration only provides conclusory statements that the primary decision makers of [CMW] were in Oklahoma, and, thus, are [sic] insufficient to establish jurisdiction." Reply at 3. Plaintiff complains that "Defendants and Mr. Hoversten have conspicuously failed to identify the corporate officers of [CMW], in which state do they work, and what activities they actually perform." *Id.* at 4. Plaintiff bases her challenge to the sufficiency of Hoversten's declaration on the Fifth Circuit's decision in *Simon v. Wal-Mart Stores, Inc.*, *see* Reply at 3, which states in relevant part that "[r]emoval . . . cannot be based simply upon conclusory allegations," 193 F.3d 848, 850 n.7 (5th Cir. 1999) (cleaned up).

*Simon* is readily distinguishable. In *Simon*, the defendant's notice of removal stated flatly that the amount in controversy exceeded the $75,000 statutory minimum. 193 F.3d at 850. The defendant "neither filed an affidavit with its Notice of Removal nor set forth any facts in

controversy in that Notice; it merely alleged in a conclusional manner that the amount in controversy exceeded the jurisdictional amount." *Id.* Nor did the pleadings contain any allegations regarding the amount of the plaintiff's damages. *Id.* at 849–51. The Fifth Circuit therefore ruled that the defendant had failed to satisfy its "affirmative burden to produce information, through factual allegations or an affidavit, sufficient to show by a preponderance of the evidence that the amount in controversy exceeded $75,000." *Id.* at 851 (cleaned up). The panel accordingly remanded the case to state court. *Id.* at 851–52.

Unlike the defendant in *Simon*, Defendants here *have* filed an affidavit (or, more accurately, a declaration) in support of removal. *See generally* Hoversten Decl.[19] Thus, Defendants have not "merely alleged in a conclusional manner" that they've satisfied the applicable jurisdictional prerequisites; they've corroborated their allegations with admissible evidence. *Contra Simon*, 193 F.3d at 850.

Nor does Hoversten's declaration flatly assert, without further factual elaboration, that CMW is an Oklahoma citizen. *See* Hoversten Decl. at 2–3. Rather, Hoversten declares that

- "CMW is a corporation organized under the laws of the state of Oklahoma;"

- "CMW's officers control and direct CMW's corporate activities from its headquarters located in Perry, Oklahoma;"

- "The primary decision-makers for all of CMW's business activities are located in Perry, Oklahoma at CMW's headquarters;" and

- "CMW's Texas activities are governed by personnel located in CMW's Perry, Oklahoma corporate headquarters."

---

[19] The Court assumes (without deciding) that *Simon*'s prohibition against "merely alleg[ing]" jurisdictional facts "in a conclusional manner" applies to the complete diversity requirement—which was not at issue in *Simon*—and not solely to the amount-in-controversy requirement. *See Simon*, 193 F.3d at 849–52.

*Id.* at 2.  Plaintiff has not directed the Court to any authority requiring Defendants to go further and "identify the corporate officers of" CMW and specify "what activities they actually perform," *see* Reply at 4, and this Court is not aware of any.  To the contrary, this Court has previously found complete diversity based on a declaration that contained no such information.[20]  Indeed, this Court has found complete diversity in a case where the defendant submitted an affidavit with far *less* factual detail than Hoversten's declaration.[21]  The Court accordingly credits Hoversten's affidavit and finds that CMW is an Oklahoma citizen.

---

[20] *Compare* Decl. of Shawna E. Gasik, *Origins Recovery of Tex., LLC v. Beech St. Corp.*, No. 1:13-cv-00300 (W.D. Tex. Apr. 12, 2013), ECF No. 1-2 ("Beech Street is a corporation formed under the laws of the State of California.  Beech Street's California registration lists its main office at 535 E. Diehl Rd., Naperville, Illinois 60543.  Additionally, Beech Street's federal tax filings list its Naperville, Illinois address . . . . Beech Street's executives are located in Naperville, Illinois; New York, New York; and Waltham, Massachusetts.  None of Beech Street's executives are located in its Texas offices.  Beech Street's corporate recordkeeping and other ministerial functions occur either in . . . Naperville, IL, New York, NY, or Waltham, MA."), *with Origins Recovery of Tex. LLC v. Beech St. Corp.*, No. 1:13-cv-00300, 2013 WL 12131204, at *2 (W.D. Tex. June 10, 2013) ("Beech Street . . . provides a sworn declaration from a paralegal at its parent corporation indicating Beech Street's corporate headquarters is in Illinois, with its executives spread among Illinois, New York, and Massachusetts . . . . Beech Street's declaration amply demonstrates it does not maintain its principal place of business in Texas . . . . [D]iversity jurisdiction exists . . . .").

[21] *Compare* Aff. of Stacy S. Ingram, *Ernewayn v. Home Depot U.S.A., Inc.*, No. 3:12-cv-00387 (W.D. Tex. Oct. 15, 2012), ECF No. 3-1 ("Home Depot U.S.A., Inc. is incorporated under the laws of the state of Delaware . . . . Home Depot U.S.A.'s principal place of business is located in Atlanta, Georgia."), *with Ernewayn v. Home Depot U.S.A., Inc.*, No. 12-CV-00387, 2012 WL 12878298, at *4 (W.D. Tex. Dec. 3, 2012) (Guaderrama, J.) ("Defendant alleged in its Notice of Removal and provided an affidavit demonstrating that Defendant is incorporated in Delaware with its principal place of business in Georgia.  As such, the Court finds that Defendant sufficiently proved by a preponderance of the evidence that diversity of citizenship exists in the instant cause of action . . . .").

Although I determined that "complete diversity existed" in *Ernewayn*, 2012 WL 12878298, at *4, I nevertheless determined that the case was nonremovable under 28 U.S.C. § 1445(c), *see id.* at *5–8, which provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States," 28 U.S.C. § 1445(c).

### 3.     Radius is an Oklahoma Citizen, Not a Texas Citizen

Plaintiff finally argues that, even if the Court ultimately concludes she is a Texas citizen after conducting an evidentiary hearing, the parties still would not completely diverse because Radius is a Texas citizen too.  Mot. at 8–10.

Plaintiff is wrong.  Once again, "the citizenship of an LLC" like Radius "is determined by the citizenship of all its members."  *MidCap*, 929 F.3d at 314 (cleaned up).  Hoversten avers on personal knowledge and under penalty of perjury that CMW is Radius's sole member, and Plaintiff offers no evidence to the contrary.  Hoversten Decl. at 2–3; *see also* Radius LLC Agreement, ECF No. 11-1, at 5 (listing CMW as Radius's sole member).  Thus, Radius is a citizen of whichever state(s) CMW is a citizen.  *MidCap*, 929 F.3d at 314.  As explained above, that state is Oklahoma.  *See supra* Section II.B.2.  Thus, Radius is an Oklahoma citizen too.  *See MidCap*, 929 F.3d at 314.

Plaintiff insists that Radius is also a citizen of Texas because its headquarters—and, thus, its "nerve center"—"is in Texas."  Mot. at 1, 3, 8–10; *see also* Donegan Decl. at 9 (averring that Radius "directed, controlled and coordinated the company's operations from [its] Weatherford, Texas office").  Again, however, Radius is an LLC, so its nerve center is irrelevant to its citizenship.  *See, e.g.*, *Warren*, 717 F. App'x at 475 n.4 ("[T]he citizenship of an LLC is determined by the citizenship of its members, not its principal place of business."); *Johnson*, 724 F.3d at 352 ("A limited liability company's citizenship is not defined by its principal place of business, and thus the location of its nerve center is not at issue for purposes for establishing diversity jurisdiction.").  All that matters is the citizenship of Radius's sole member, CMW, which is Oklahoma.

Resisting that conclusion, Plaintiff asserts that an Oklahoma LLC—such as Radius—qualifies as a corporation for jurisdictional purposes because it "share[s] the salient characteristics of a traditional corporation"—namely, liability protections for its owners.  Mot. at 8–9 & nn.2–3; *see also* Radius LLC Agreement at 4 (specifying that Radius "has been organized as a [sic] Oklahoma limited liability company").  In other words, argues Plaintiff, an Oklahoma LLC is so similar to a corporation that it qualifies as a "corporation" under 28 U.S.C. § 1332(c)(1)'s mandate that "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business."  Mot. at 8–9 & nn.2–3; 28 U.S.C. § 1332(c)(1).

Plaintiff's argument is frivolous.  Plaintiff has not cited to any case suggesting that the rules for determining an LLC's citizenship vary depending on whether the LLC shares characteristics with a corporation under applicable state law.  *See* Mot. at 8–9 & nn.2–3.  To the contrary, the Fifth Circuit has held "that a[n] LLC should not be treated as a corporation for purposes of diversity jurisdiction.  Rather, the citizenship of a[n] LLC is determined by the citizenship of all its members," period.  *Harvey*, 542 F.3d at 1080.  As other courts have correctly explained, "an entity's citizenship for purposes of diversity" does not depend "on the entity's unique features or whether state law makes the entity more like a corporation than an unincorporated association."  *Mgmt. Nominees, Inc. v. Alderney Invs., LLC*, 813 F.3d 1321, 1324 (10th Cir. 2016).

In any event, the Tenth Circuit—which has particular expertise applying Oklahoma law—has rejected Plaintiff's exact argument that Oklahoma LLCs are effectively equivalent to corporations for jurisdictional purposes.[22]  This Court finds the Tenth Circuit's reasoning

---

[22] *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1235–38 (10th Cir. 2015) ("Siloam Springs is not a corporation; it is an Oklahoma limited liability company . . . . Century Surety

persuasive and adopts its holding as its own.  Thus, the location of Radius's "nerve center" doesn't matter, and Radius is a citizen of Oklahoma—not Texas.

## III.    CONCLUSION

To summarize, the Court has determined that CMW and Radius are citizens of Oklahoma.  No party disputes—and the Court finds—that TTC is a citizen of Delaware and Minnesota.[23]

Thus, if the Court ultimately finds that Plaintiff is a Texas citizen, it will conclude that the parties are completely diverse and exercise jurisdiction over the case.  If, however, the Court ultimately determines that Plaintiff is a citizen of Oklahoma, Delaware, or Minnesota, the Court will have to remand the case.

---

asserts an LLC is sufficiently like a corporation so that it should be treated similarly to a corporation for purposes of 28 U.S.C. § 1332.  In particular, Century Surety notes an LLC is treated as a 'separate legal entity' that can sue and be sued under Oklahoma law, and members of an LLC are shielded from personal liability . . . . Century Surety is wrong in asserting an LLC is equivalent to a corporation under Oklahoma law . . . Oklahoma law makes clear that an LLC is not a corporation but is, instead, an unincorporated association . . . . Thus, this court must reject Century Surety's request to determine the citizenship of Siloam Springs by reference to its state of organization and the state of its primary business operations and, instead, joins all other circuits that have considered the matter in concluding Siloam Springs takes the citizenship of all its members." (internal citations omitted)).

[23] *See* Hoversten Decl. at 2 ("TTC is a corporation organized under the laws of the state of Delaware and maintains its headquarters (i.e., its principal office) in Bloomington, Minnesota, which was also its principal place of business during the employment of Plaintiff . . . ."); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . .").

**Fig. 3. The Court's Determinations So Far Regarding the Parties' Citizenship**

| Plaintiff | Defendants |
|---|---|
| • **Trisha Donegan (??)** | • **TTC (DE, MN)**<br><br>• **CMW (OK)**<br><br>• **Radius (OK)** |
| **Whether the parties are diverse depends on Plaintiff's citizenship** ||

The Court will therefore hold an **EVIDENTIARY HEARING** to determine Plaintiff's state of citizenship.

The Court **DIRECTS** its Courtroom Deputy to contact the parties to select a mutually convenient date for the evidentiary hearing.

The Court respectfully **ADMONISHES** Plaintiff that she will almost certainly have to testify under oath at the evidentiary hearing about whether she resides in Texas and intends to remain there.[24]  If she anticipates answering both of those questions "yes," it would waste her time, the attorneys' time, and the Court's time to conduct a hearing to determine her citizenship. Thus, if Plaintiff does not seriously contest that she is a Texas citizen, the Court **STRONGLY ENCOURAGES** her to file a notice stating as much before the evidentiary hearing.  The Court will then cancel the hearing, make a factual finding that Plaintiff is a Texas citizen, determine that all Defendants are citizens of a different state than Plaintiff, and deny Plaintiff's Motion to Remand.

---

[24] Or, more accurately, that she resided in Texas and intended to remain there at the time she filed her suit in state court and at the time Defendants removed the case.  *See Coury*, 85 F.3d at 249 ("In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court.").

The Court **INSTRUCTS** the Clerk of Court to keep "Plaintiff's Motion to Remand" (ECF No. 10) **PENDING ON THE DOCKET** until the Court determines Plaintiff's state of citizenship.

**So ORDERED and SIGNED this 30th day of November 2022.**

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**